

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| Melissa Reynolds | ) | |
|     Plaintiff, | ) | Case No: 2:17-cv-04528-JLL-JAD |
| vs | ) | CIVIL ACTION |
| Simon's Agency, Inc., Experian Information | ) | 1st AMENDED COMPLAINT |
| Solutions, Inc. and Equifax Information | ) | |
| Services LLC, | ) | DEMAND FOR JURY TRIAL |
|     Defendants, | ) | |

Plaintiff MELISSA REYNOLDS, ("Plaintiff"), brings this Complaint against the Defendants SIMON'S AGENCY, INC., EXPERIAN INFORMATION SOLUTIONS, INC. and EQUIFAX INFORMATION SERVICES LLC (hereinafter collectively referred to as "Defendants"), respectfully sets forth, complains and alleges, upon information and belief, the following:

## NATURE OF THIS ACTION

1. This action is brought under the Fair Credit Reporting Act, 15 U.S.C. 1681 et seq. (the "FCRA"), the Fair Debt Collection Practices Act, 15 U.S.C. 1692 et seq. (the "FDCPA"), and the Telephone Consumer Protection Act, 47 U.S.C. §227 et seq. (the "TCPA").

2. Congress enacted the FCRA to insure fair and accurate reporting, promote efficiency, and protect consumer privacy rights. The FCRA imposes duties on credit reporting agencies along with those sources that provide credit information to credit reporting agencies, called "furnishers." Such duties include a duty to investigate disputed claims and a duty to notate disputes.

3. In the same vein, Congress enacted the FDCPA in 1977 in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt

collection practices by many debt collectors." 15 U.S.C. § 1692(a). At that time, Congress was concerned that "abusive debt collection practices contribute to the number of personal bankruptcies, to material instability, to the loss of jobs, and to invasions of individual privacy." Id. Congress concluded that "existing laws . . . [we]re inadequate to protect consumers," and that "the effective collection of debts" does not require "misrepresentation or other abusive debt collection practices." 15 U.S.C. §§ 1692(b) & (c).

4. Congress explained that the purpose of the Act was not only to eliminate abusive debt collection practices, but also to "insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." Id. § 1692(e). After determining that the existing consumer protection laws were inadequate, id. § 1692(b), Congress gave consumers a private cause of action against debt collectors who fail to comply with the Act. Id. § 1692k.

5. Finally, the TCPA prohibits auto-dialed calls which are placed to a called party's cellular phone without that party's consent. Senator Hollings, the TCPA's sponsor, described these auto-dialed calls as "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1255-56 (11th Cir. 2014), citing, 137 Cong. Rec. 30,821 (1991).

6. In 1991, Congress responded to these abuses by passing the TCPA. In enacting the TCPA, Congress made findings that telemarketing had become "pervasive due to the increased use of cost-effective telemarketing techniques." See, PL 102-243, § 2(1). "Residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content

or the initiator of the message, to be a nuisance and an invasion of privacy." Id. § 2(10). The TCPA's findings also reflect Congress's conclusion that "[i]individuals' privacy rights, public safety interests, and commercial freedoms of speech and trade must be balanced in a way that protects the privacy of individuals and permits legitimate telemarketing practices." Id. § 2(9). Consumers who receive these unauthorized calls thus have suffered a distinct privacy-related interest, namely the "intentional intru[sion] . . . upon their solitude or seclusion of their private affairs or concerns." Intrusion Upon Seclusion, Restatement (Second) of Torts § 652B (1977).

7. Defendant Simon's Agency, Inc. ("Simon's") is and was at all relevant times a debt collector attempting to collect an alleged debt owed to Raymour & Flanigan (R&F).
8. Simon's has and is continuously attempting to collect the R&F debt, including continuing to report the R&F debt on Plaintiff's credit reports, even after multiple disputes by the Plaintiff.
9. Simon's failed to report to the credit bureaus that the trade line was in dispute.
10. As part of Simon's collection efforts, Simon's has called Plaintiff's cellular telephone number of 908-305-3143 from multiple numbers including 315-849-4156 using an automatic dialing telephone system and/or pre-recorded messages after Plaintiff notified Simon's to stop calling her cellular phone.
11. Defendants Experian Information Solutions, LLC ("Experian") and Equifax Information Services, LLC ("Equifax") are, and was at all relevant times, credit reporting agencies.
12. Experian and Equifax have both failed to properly reinvestigate multiple disputes made by the Plaintiff regarding the Simon's trade line listed on her credit report.

13. Experian and Equifax have both failed to notate the credit file with consumer notes that, "Consumer disputes tradeline".
14. This incorrect reporting and continued collection efforts, including phone calls, has caused Plaintiff harm.
15. Plaintiff is seeking individual damages, equitable and declaratory relief, and reasonable attorneys' fees and costs for her claim under the FCRA, FDCPA, and TCPA.

## JURISDICTION

16. This Court has jurisdiction of the Plaintiff's FCRA, FDCPA and TCPA claims under 28 U.S.C. § 1331; 15 U.S.C. § 1681p; 15 U.S.C. § 1692; 47 U.S.C. § 227 and 12 U.S.C. § 2614. The Court has supplemental jurisdiction on remaining claims, under 28 U.S.C. § 1367.
17. All Defendants regularly conduct business in this judicial district. Furthermore, the events in question all occurred within this district.
18. Venue is therefore proper in this district under 28 U.S.C. 1391(b).

## PARTIES

19. Plaintiff Melissa Reynolds is natural persons and resident of Elizabeth, New Jersey.
20. Simon's is a debt collector corporation located at 4963 Wintersweet Drive, Liverpool, New York 13088.
21. Upon information and belief, Simon's is a company that uses the mail, telephone, and facsimile and regularly engages in business the principal purpose of which is to attempt to collect debts alleged to be due another
22. Simon's is a "debt collector," as defined under the FDCPA under 15 U.S.C. § 1692a(6).

23. Simon's is a furnisher of information as contemplated by 15 U.S.C. § 1682s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.
24. Defendant Equifax is one of the largest credit reporting agencies in the United States, and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers.
25. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.
26. Equifax's principal place of business is 1550 Peach Tree Street, N.W., Atlanta, GA 30309.
27. Defendant Experian is one of the largest credit reporting agencies in the United States, and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers.
28. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.
29. Experian's principal place of business is 475 Anton Boulevard, Costa Mesa, California 92626.

## FACTS COMMON TO ALL COUNTS

30. On or around April of 2013, Plaintiff financed purchases from R&F in excess of five thousand dollars.

31. Pursuant to the agreement with R&F, Plaintiff made all monthly payments to the account # REYNM29419.
32. On or around June 06, 2014, R&F sent Plaintiff a paid in full notice a indicated there was a credit balance of $276.05 on account # REYNM29419. **See Exhibit A.**
33. On or around June 13, 2014, R&F sent Plaintiff another paid in full notice letter indicating the account was paid in full. **See Exhibit B.**
34. Some time, better known to Simon's, Simon's began calling the Plaintiff's cellular telephone in an attempt to collect the alleged R&F debt.
35. On or around April 27, 2015, Plaintiff answered a call from Simon's at 315-849-4156, and initially heard a pause before a live representative got on the line. Plaintiff informed the live representative to stop calling her.
36. Plaintiff faxed a letter to Simon's agency to cease communication and Simons and despite the fax being received the communication did not cease. **See Exhibit C.**
37. Although Plaintiff informed Simon's to stop calling her, Simon's continued calling the Plaintiffs cellular telephone from multiple numbers including 315-849-4159, 315-701-0858, and 315-454-8688.
38. Defendant's use of an automated telephone dialing system to place calls to the Plaintiff was clearly indicated by (1) the placement of several or more calls to the Plaintiff per day, and (2) the telltale clicks and pauses before a human voice would come on the line when the Plaintiff would answer the phone.
39. On or around July 27, 2016, Plaintiff sent a certified letter to Simon's disputing the alleged debt, asking Simons to verify the debt, and again asked Simon's to cease calling her. See **Exhibit D**.
40. Simon's failed to respond within 30 days to the debt validation letter.

41. On or around August 14, 2016, Plaintiff sent a certified letter to Simon's again asking Simon's to cease calling her. See **Exhibit E**.
42. Plaintiff continued disputing the debt with Simon's by sending multiple dispute letters via mail and fax after July 27, 2016.
43. Despite Plaintiff paid the alleged debt, disputed the debt, and Simons ignoring to validate the debt, Simon's continued trying to collect an amount that they were not entitled to, including by sending a collection letter on April 19, 2017. See **Exhibit F**.
44. Beginning on or around June 2015, Simon's began reporting the alleged R&F debt with Experian and Equifax.
45. Simons failed to inform the credit bureaus (Experian and Equifax) that the tradeline was in dispute by the consumer.
46. To date Simon's has failed to report the tradeline is in dispute to Experian and Equifax.
47. Starting around July 2015, Plaintiff began disputing the Simon's tradeline with Equifax and Experian. On each occasion, Equifax and Experian responded, claiming to have done an investigation of the dispute and verifying that the information being reported by Simon's was accurate.
48. Plaintiff requested that Equifax add a comment to credit report to reflect the tradeline is in dispute.
49. The comment that "Consumer disputes this Account Information" was added to the Equifax report August 2016 and remained until November 2016.
50. Equifax removed the comment that "Consumer disputes this Account Information" sometime after November 2016 and added the comment back around May 11, 2017.
51. Each time Plaintiff would dispute the tradeline with Equifax, Equifax would send a letter stating they need to verify Plaintiffs identity even though the

Plaintiffs letters included a copy of Plaintiff's drivers license and utility bill as requested. **See Exhibit G**

52. On April 10, 2017, Plaintiff again disputed the Simon's tradeline with Equifax by sending a certified letter which included the paid-in-full notice sent to the Plaintiff. **See Exhibit H.**

53. On April 25th, 2017, Plaintiff again disputed the Simon's tradeline with Equifax by sending a certified letter which included the paid in full notice sent to the Plaintiff. **See Exhibit I.**

54. To date, Equifax continues to report the Simon's information as accurate.

55. Plaintiff requested that Experian add a comment to credit report to reflect the tradeline is in dispute.

56. Plaintiff requested that Experian add a comment to credit report that "Consumer disputes this Account Information" to reflect the tradeline is in dispute sometime around July 2015.

57. Experian added the comment, "Account info. disputed by consumer", in September 2016.

58. On April 10, 2017, Plaintiff again disputed the Simon's tradeline with Experian by sending a certified letter which included the paid-in-full notice sent to the Plaintiff. **See Exhibit J.**

59. On April 25th, 2017, Plaintiff again disputed the Simon's tradeline with Experian by sending a certified letter which included the paid in full notice sent to the Plaintiff.

60. Plaintiff has been repeatedly been harmed due to Defendants' unlawful conduct.

## COUNT I

VIOLATIONS OF THE FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681i INDIVIDUALLY AGAINST EQUIFAX

61. All preceding paragraphs are realleged.
62. At all times pertinent hereto, Equifax was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).
63. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that information from the consumer's file. See 15 U.S.C. § 1681i(a)(5)(A).
64. On multiple occasions in 2016 and 2017, Plaintiff initiated disputes with Equifax requesting that it correct a specific item in her credit file that is patently inaccurate and damaging to her.
65. Equifax having either conducting no investigation or failing to conduct a reasonable investigation, verified the inaccurate item on her credit file.
66. The FCRA provided that if the reinvestigation does not resolve the dispute, the consumer may file a brief statement setting forth the nature of the dispute. The consumer reporting agency may limit such statements to not more than 100 hundred words if it provided the consumer with assistance in writing a clear summary of the dispute. See 15 U.S.C. § 1681i(b).
67. As a direct and proximate result of Equifax's willful and/or negligent refusal to conduct a reasonable investigation and to provide a statement of dispute per consumers request as mandated by the FCRA, Plaintiff has been harmed.

## COUNT II
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT 16 U.S.C. § 1681i INDIVIDUALLY AGAINST EXPERIAN

68. All preceding paragraphs are realleged.

69. At all times pertinent hereto, Experian was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).
70. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that information from the consumer's file. See 15 U.S.C. § 1681i(a)(5)(A).
71. On multiple occasions in 2016 and 2017, Plaintiff initiated disputes with Experian requesting that it correct a specific item in her credit file that is patently inaccurate and damaging to her.
72. Experian having either conducting no investigation or failing to conduct a reasonable investigation, verified the inaccurate item on her credit file.
73. The FCRA provided that if the reinvestigation does not resolve the dispute, the consumer may file a brief statement setting forth the nature of the dispute. The consumer reporting agency may limit such statements to not more than 100 hundred words if it provided the consumer with assistance in writing a clear summary of the dispute. See 15 U.S.C. § 1681i(b).
74. As a direct and proximate result of Experian's willful and/or negligent refusal to conduct a reasonable investigation and to provide a statement of dispute per consumers request as mandated by the FCRA, Plaintiff has been harmed.

## COUNT III
### FAILURE TO INVESTIGATE DISPUTE FCRA, 15 USC § 1681s-2(b)
### INDIVIDUALLY AGAINST SIMON'S

75. All preceding paragraphs are re-alleged.
76. Furnishers of credit information have a duty under the FCRA to investigate disputes from consumers as to the accuracy of information being reported.

77. On multiple occasions, Plaintiff submitted a written dispute to the credit bureaus disputing the accuracy of how Simon's was reporting the R&F debt.
78. Simon's was obligated, pursuant to section 1681s-2(b) of the FCRA to conduct a complete and thorough investigation with respect to Plaintiff's dispute.
79. Simon's failed to reasonably investigate Plaintiff's dispute. Indeed, Simon's on-going failures to correct Plaintiffs' account information is evidence that its investigation into Plaintiff's dispute was deficient.
80. Simon's failed to provide notice that the tradeline was in dispute to the consumer reporting agency.
81. Simon's conduct violated section 1681s-2(b) of the FCRA.
82. As a consequence thereof, Plaintiff suffered damages.

## COUNT IV
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT INDIVIDUALLY AGAINST SIMON'S

83. Plaintiff repeats, reiterates and incorporates the allegations contained in paragraphs above herein with the same force and effect as if the same were set forth at length herein.
84. Defendant's debt collection efforts attempted and/or directed towards the Plaintiff violated various provisions of the FDCPA, including but not limited to 15 U.S.C. § 1692e and 1692f.
85. Pursuant to 15 U.S.C. §1692e, a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.
86. Pursuant to 15 U.S.C. §1692e, communicating or threatening to communicate to any person credit information which is know or which

should be known to be false, including the failure to communicate that a disputed debt is disputed.

87. Pursuant to 15 U.S.C. §1692f(1), a debt collector may not attempt to collect any amount unless such amount is authorized by the agreement creating the debt or permitted by law.

88. Defendant violated said section by:

- Falsely representing the amount of the debt in violation of §1692e(2)(A).

- Failure to communicate that a disputed debt is disputed in violation of §1692e(8)

- Making a false and misleading representation in violation of §1692e(10).

- Attempting to collect an amount they are not entitled to in violation of §1692f(1).

89. By reason thereof, Defendant is liable to Plaintiff for judgment that Defendant's conduct violated Section 1692e and 1692f et seq. of the FDCPA, actual damages, statutory damages, costs and attorneys' fees.

## COUNT V
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT INDIVIDUALLY AGAINST SIMON'S

90. Plaintiff repeats and incorporates by reference all of the above paragraphs of the Complaint as though fully stated herein.

91. The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227(b) et seq.

92. As a result of Defendant's violations of 47 U.S.C. § 227(b) et seq. Plaintiff is entitled to an award of $500.00 for each and every negligent violation of the TCPA pursuant to 47 U.S.C. § 227(b)3.

93. As a result of Defendant's violations of 47 U.S.C. § 227(b) et seq. Plaintiff is entitled to an award of treble damages $1,500.00 for each and every knowing and/or willful violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3).

## DEMAND FOR TRIAL BY JURY

94. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demand judgment against Defendants as follows:

A. Awarding Plaintiff statutory damages;

B. Awarding Plaintiff costs of this action and reasonable attorneys' fees and expenses;

C. A declaration that Defendants' conduct alleged herein is unlawful, as set forth more fully above;

D. Enjoining Defendants from engaging in the unjust and unlawful conduct alleged herein; and

E. Awarding Plaintiff any further relief as this Court may deem just and proper.

Dated 1/23/18

Melissa S Reynolds